UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>ROBERTO SANTIAGO,<br><br>                     Defendant. | No. 10-cr-555 (RJS)<br>ORDER |

RICHARD J. SULLIVAN, Circuit Judge:

Before the Court is a request by Defendant Roberto Santiago for compassionate release under the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), in light of the COVID-19 pandemic. (Doc. Nos. 134, 137.) Santiago initially sought such relief in April (Doc. No. 134), which the government opposed on procedural and substantive grounds (Doc. No. 135). The Court denied Santiago's request without prejudice to renew, finding that he had failed to exhaust his administrative remedies. (Doc. No. 136.) Since then, Santiago has submitted additional documentation regarding the efforts he took to exhaust his remedies within the Federal Bureau of Prisons ("BOP"). (*See* Doc. No. 137.) Therefore, the Court may now consider his motion on the merits. Although Santiago has medical conditions that could put him at a higher risk of serious health consequences should he contract COVID-19, those conditions appear to be under control, the BOP has taken significant efforts to curb the spread of COVID-19 at the facility where he is housed, and the reasons supporting his sentence weigh strongly against a compassionate release at this time. Accordingly, Santiago's motion is DENIED.

I. BACKGROUND

On December 21, 2012, Santiago was charged with one count of conspiring to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A),

and 846.  (Doc. No. 38.)  On April 2, 2013, Santiago pleaded guilty, pursuant to a plea agreement, to the lesser-included offense of conspiring to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.  In February 2014, following a hearing regarding Santiago's role in the conspiracy as well as the scope of that conspiracy, the Court sentenced Santiago to 144 months' imprisonment to be followed by five years' supervised release.  (Doc. No. 76.)  On December 1, 2015, following amendments to the United States Sentencing Guidelines that retroactively lowered the applicable offense level for most drug offenses by two, the Court reduced Santiago's prison term to 135 months.  (Doc. No. 110.)  Santiago is currently housed at the BOP's low-security facility at Fort Dix, where there have been 14 confirmed cases of COVID-19.  Santiago is set to be transferred to the Bronx Residential Reentry Center on December 22, 2020, and to be released on December 16, 2021.  (Doc. No. 135 at 1–2.)

In a letter dated April 30, 2020 but received in Chambers on May 18, 2020, Santiago submitted a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), which he contended was to "serve as a legal form of [his] intention to preserve [his] substantial rights herein . . . due to FCI-Fort Dix's Administration Staff's delay in the releasing of [his] medical records."  (Doc. No. 134 at 2.)  In this submission, Santiago argued he should be released because he suffers from a pre-existing heart condition and asthma, which put him at a higher risk of complications from COVID-19.  (*Id.* at 3.)  On May 22, 2020, the government submitted a letter opposing Santiago's motion for compassionate release, contending both that Santiago had failed to exhaust administrative remedies and that his petition fails on the merits.  (Doc. No. 135.)  As a preliminary matter, the government noted that Santiago did not attach his purported request to the BOP or state when that request was made, and "a BOP Fort Dix official ha[d] informed the [g]overnment that there [was] no record of Santiago having petitioned the BOP for a reduced sentence."  (*Id.* at 2.)  It further argued that Santiago's underlying health conditions are

under control, that releasing him from prison would not materially reduce his odds of contracting COVID-19, and that the sentencing factors under 18 U.S.C. § 3553(a) do not support release. (*Id.* at 8-10.)  On May 28, 2020, the Court denied Santiago's motion because he failed to exhaust his administrative remedies, but invited Santiago to file a letter with the Court if he had in fact filed for release with the BOP.  (Doc. No. 136 at 2.)  Santiago thereafter submitted another letter to the Court, which was dated June 4, 2020 but received in Chambers on June 12, 2020, in which he argued that the Court should dismiss the government's opposition as "moot."  (Doc. No. 137.)  In that submission, Santiago attached evidence demonstrating that he moved the BOP for compassionate release on April 4, 2020.  (*Id.*)  In light of this supplemental information, the government conceded that Santiago had exhausted administrative remedies, but nonetheless argued that the Court should deny Santiago's motion on the merits.  (Doc. No. 139.)  Finally, in a letter dated June 9, 2020 but received in Chambers on June 12, 2020, Santiago asked the Court to reconsider its dismissal of his motion for compassionate release.  (Doc. No. 140.)  Because Santiago has exhausted his administrative remedies, the Court considers his motion on the merits.

## II.  APPLICABLE LAW

The Court "may not modify a term of imprisonment once it has been imposed except pursuant to statute."  *United States v. Roberts*, No. 18-cr-528-5 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (internal quotation marks omitted).  Section 3582(c)(1)(A) provides one such exception, often referred to as "compassionate release."  Through that provision, the Court may "reduce" a defendant's sentence where "extraordinary and compelling reasons warrant such a reduction," and such relief would be consistent with both the factors in 18 U.S.C. § 3553(a) and "applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

### III. DISCUSSION

Here, Santiago maintains that the COVID-19 pandemic, together with his heightened risk from his underlying heart condition and asthma, merits a compassionate release. The Court disagrees.

In ruling on a motion for compassionate release, the Court, like many others, conducts a "fact-intensive" inquiry into the "unique circumstances" of the defendant. *See United States v. Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (internal quotation marks omitted). Specifically, the Court considers the "age of the prisoner; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison; the proliferation and status of infections in the prison facility; the proportion of the term of incarceration that has been served by the prisoner; and the sentencing factors in 18 U.S.C. § 3553(a), with particular emphasis on the seriousness of the offense, the deterrent effect of the punishment, and the need to protect the public." *Id.* (citations omitted).

First, while the Court acknowledges that Santiago, who is 41 years old, suffers from some underlying health conditions that may present an increased risk, the record reflects that those conditions are under control, and that "the MDC and other federal detention facilities are undertaking steps to minimize the danger COVID-19 poses to inmates." *United States v. Garcia*, No. 16-cr-719-2 (RJS), 2020 WL 2539078, at *2 (S.D.N.Y. May 19, 2020). In fact, the Court understands that, at the time of the government's initial response, the BOP facility where Santiago is housed had zero confirmed cases of COVID-19. (Doc. No. 135 at 9–10.) While there now appear to be approximately 14 positive cases, *see* https://www.bop.gov/coronavirus/ (last accessed July 3, 2020), "FCI Fort Dix is a large facility with over 2,700 inmates," and thus "approximately 14 confirmed inmate cases of the COVID-19 virus" is "a relatively small

4

infection rate." *United States v. McIntyre*, No. 07-cr-6174L (DGL), 2020 WL 3564782, at *2 (W.D.N.Y. July 1, 2020); *see also United States v. White*, No. 17-cr-431 (RMB), 2020 WL 3545513, at *2 (S.D.N.Y. June 29, 2020) ("FCI Fort Dix appears to be responding to the pandemic and 'is not a facility that has seen a massive outbreak of COVID-19.'" (quoting *United States v. Garcia*, No. 18-cr-802-4 (CM) 2020 WL 2468091, at *5 (S.D.N.Y. May 13, 2020)); *United States v. Chappell*, No. 16-cr-512 (LTS), 2020 WL 3415229, at *3 (S.D.N.Y. June 22, 2020) ("FCI Fort Dix has made further efforts to contain the spread of the virus, including implementing screening procedures, inmate temperature and symptom checks, the distribution and mandatory use of masks, and extensive cleaning and disinfecting measures.").

Second, even if Santiago had met this threshold burden, the sentencing factors under 18 U.S.C. § 3553(a) do not support release. When considering compassionate release, the Court must assess the § 3553(a) factors to determine "whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *United States v. Ebbers*, 432 F. Supp. 3d 421, 431 (S.D.N.Y. 2020). Here, (1) "the nature and circumstances of the offense," (2) "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct," all outweigh the facts that might otherwise support Santiago's release. *See* 18 U.S.C. § 3553(a).

In 2014, the Court sentenced Santiago to 144 months' imprisonment for his role as an organizer, leader, manager, or supervisor in a drug conspiracy that involved at least 10 kilograms of heroin. In doing so, the Court noted the "crippling" impact of heroin on its users and Santiago's role in facilitating the trade of a dangerous drug that "destroys lives." (Doc. No. 76 at 117.) The Court emphasized the need to promote deterrence, and that "society has a right to

5

voice some outrage" at conduct like Santiago's, which continued over an extensive period of time. (*Id.* at 118–19.) The same concerns that drove that sentence, which was later modified to 135 months' imprisonment in light of changes to the Sentencing Guidelines, remain relevant today. A substantial sentence of incarceration is necessary to promote respect for the law, provide just punishment, and to deter similar criminal conduct. *See* § 3553(a). Releasing Santiago now – after 91 months – would go against the fundamental goals of sentencing. *See United States v. Walter*, 18-cr-834-6, 2020 WL 1892063, at *3 (S.D.N.Y. Apr. 16, 2020); *United States v. Butler*, 19-cr-834-10, 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020). Thus, while the Court is sympathetic to Santiago's concerns for his health, it cannot grant compassionate release in these circumstances. *See Ebbers*, 432 F. Supp. 3d at 431 (noting that compassionate release should not "undermine the goals of the original sentence").

Of course, Santiago may still pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP. The decision to grant that relief, however, is exclusively reserved to the discretion of the BOP.

### IV. CONCLUSION

For the reasons set forth above, Santiago's motion for compassionate release is DENIED. The Clerk of Court is respectfully directed to mail a copy of this order to Santiago.

SO ORDERED.

Dated: July 6, 2020
New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation